UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE No. 5:20-cv-00027-TBR

AMANDA C. SEEMANN                                                                                  PLAINTIFF

v.

THOMAS C. COPELAND, *et al.*                                                                 DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court upon Defendants Thomas Copeland's ("Copeland") and Dana Jernigan d/b/a New Faith Freight's ("New Faith"), collectively ("Defendants") Motion to Dismiss. [DN 14]. Plaintiff, Amanda Seemann ("Seemann") has responded. [DN 15]. Defendants have replied. [DN 16]. As such, this matter is ripe for adjudication. For the reasons that follow, **IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss [DN 14] is **GRANTED**.

**I. Background**

The factual allegations as set out in the Complaint, [DN 1], and taken as true are as follows. On May 8, 2018, Seemann was driving a 2005 Sebring westbound on Interstate 376 in Pittsburgh, Pennsylvania. Copeland was driving a 2007 Peterbilt flatbed truck and allegedly failed to maintain control of his vehicle, yield the right of way, and keep a proper lookout for traffic. Copeland allegedly collided with the vehicle Seemann was driving and caused injury to Seemann.

Seemann alleges New Faith "had certain duties and responsibilities as defined by the Federal Motor Carrier Safety Regulations and industry standards, including the duty to properly qualify Defendant Copeland, the duty to properly train Defendant Copeland, they duty to supervise the hours of service of Defendant Copeland, the duty to properly inspect and maintain its vehicles, and the duty to otherwise establish and implement necessary management controls and systems

for the safe operation of its commercial motor vehicles." [*Id.* at 3.] Seemann further alleges "New Faith Freight was also independently negligent in hiring, training, entrusting, supervising, retaining, and/or contracting with Defendant Copeland in his operation of a commercial motor vehicle and for otherwise failing to as a reasonable and prudent trucking company would under the same or similar circumstances." [*Id.*]

Defendants now seek to dismiss Seemann's claims alleging violation of the Federal Motor Carrier Safety Regulations, claims of negligent hiring, training, entrusting, supervising, retaining, and/or contracting, and claims for punitive damages.

## II. Legal Standard

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In order to survive a motion to dismiss under Rule 12(b)(6), a party must "plead enough 'factual matter' to raise a 'plausible' inference of wrongdoing." *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.,* 727 F.3d 502, 504 (6th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ). A claim becomes plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 556 (2007)). When considering a Rule 12(b)(6) motion to dismiss, the Court must presume all of the factual allegations in the complaint are true and draw all reasonable inferences in favor of the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross and Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citing *Great Lakes Steel v. Deggendorf*, 716 F.2d 1101, 1105 (6th Cir. 1983)). "The court need not, however, accept unwarranted factual inferences." *Id.* (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)). Should the well-pleaded facts support no "more than the mere possibility of misconduct," then

dismissal is warranted. *Iqbal*, 556 U.S at 679. The Court may grant a motion to dismiss "only if, after drawing all reasonable inferences from the allegations in the complaint in favor of the plaintiff, the complaint still fails to allege a plausible theory of relief." *Garceau v. City of Flint*, 572 F. App'x. 369, 371 (6th Cir. 2014) (citing *Iqbal*, 556 U.S. at 677–79).

### III. Discussion

#### A. Negligent Hiring, Training, Entrusting, Supervising, Retention, and/or Contracting

The Supreme Court of Kentucky has identified "the elements of negligent hiring and retention a[s]: (1) the employer knew or reasonably should have known that an employee was unfit for the job for which he was employed, and (2) the employee's placement or retention at that job created an unreasonable risk of harm to the plaintiff." *Ten Broeck Dupont, Inc., v. Brooks*, 283 S.W.3d 705, 733 (Ky. 2009). "An employer may also be held liable for the negligent training or supervision of its employees -- but 'only if he or she knew or had reason to know of the risk that the employment created.'" *Hensley v. Traxx Mgmt. Co.*, 2020 WL 2297001, at *6 (Ky. Ct. App. May 8, 2020). "The common law theory of negligent entrustment is that one who entrusts her vehicle to another whom she knows to be inexperienced, careless, or reckless, or given to excessive use of intoxicating liquor while driving, is liable for the natural and probable consequences of the entrustment." *Cox v. Waits*, 2004 WL 405811, at *2 (Ky. Ct. App. Mar. 5, 2004).

Both Seemann and Defendants have cited to several out of circuit cases to support their position. Defendants argue Seemann has provided nothing "more than a formulaic recitation of the elements of a cause of action." [DN 14 at 4]. Seemann argues she has stated a cognizable claim. The Court agrees with Defendants.

Defendants primarily rely on *Schmidt v. ABF Freight System, Inc.* to support their position. In *Schmidt,* Robert Parker was riding in a truck when Timothy Yerington, a truck driver, allegedly

negligently caused a wreck resulting in the death of Robert Parker. 2019 WL 48201336, *1 (D.N.M. Oct. 1, 2019). In the complaint, Plaintiffs alleged ABF Freight System, Inc., Yerington's employer, negligently supervised and monitored Yerington. Plaintiffs alleged "ABF 'owed a duty to those members of the public, including Decedent and Plaintiffs, whom they might reasonably anticipate would be placed in a position of risk of injury as a result of negligently hiring, contracting, training, supervising, monitoring, and/or retaining an unfit driver.'" *Id.* at 2. Plaintiffs further alleged "ABF 'failed to supervise and/or monitor Defendant Yerington's operation of commercial motor vehicles, including but not limited to events where Defendant Yerington demonstrated poor judgment by operating the commercial vehicle in an unfit and unsafe manner upon highways, which was or should have been known by Defendant ABF.'" *Id.*

The Court noted that "'[a] plaintiff must offer more than an 'unadorned, the defendant-unlawfully-harmed-me accusation.'" *Id.* at 3 (quoting *Iqbal,* 556 U.S. at 678). The Court held

> "[a]lthough plaintiffs need not specify precisely how a defendant's conduct was deficient, plaintiffs' threadbare conclusions here do not reasonably give rise to a plausible inference that ABF failed to properly hire, supervise, or train Mr. Yerington. There are no allegations as to how Mr. Yerington was an unfit driver or employee, or that ABF is liable for negligently hiring, supervising, training, or retaining Mr. Yerington. Plaintiffs' unsubstantiated allegations fail to state a claim that is plausible on its face."

*Id.*

Seemann cites to several cases but relies primarily on *Alexander v. W. Express*. In *Alexander,* Alexander was driving on his way to work when a Western Express tractor trailer, driven by Kumoye Lee, allegedly "failed to yield and struck Alexander's vehicle." 2019 WL 6339907 * 1 (M.D. Pa. Oct. 18, 2019) *report and recommendation adopted,* 2019 WL 6327688 (M.D. Pa. Nov. 26, 2019). The complaint alleged Western Express was negligent by:

4

    a. Permitting [Lee] to operate its motor vehicle when it knew or should have known that [Lee] was not physically and/or mentally competent to operate said vehicle safely;

    b. Permitting [Lee] to operate its motor vehicle when it knew or should have known that [Lee] would operate the motor vehicle in a manner which would constitute a danger or hazard to other persons;

    c. Permitting [Lee] to operate its motor vehicle when it knew or should have known that [Lee] had worked too many hours and did not have sufficient rest so as to cause him to be a danger to other motor vehicles on the roadway;

    d. Permitting [Lee] to operate its motor vehicle when it knew or should have known that [Lee] would operate the motor vehicle in a manner set forth above in Paragraph 19;

    e. Failing to properly evaluate [Lee] for hire;

    f. Failing to properly investigate and evaluate its agents, servants, and/or employees, including [Lee];

    g. Failing to properly train its agents, servants, and/or employees, including [Lee];

    h. Failing to properly supervise its agents, servants, and/or employees, including [Lee];

    i. Failing to adopt and follow adequate policies, procedures, and/or other safeguards to ensure that its agents, servants, and/or employees, including [Lee], would not negligently, carelessly, and recklessly operate its motor vehicles on the roadways;

    j. Failing to provide ongoing training to [Lee];

    k. Permitting the truck, which lacked appropriate safeguards, equipment, and maintenance that would have avoided or prevented the injuries to Mr. Alexander, to remain in operation;

    l. Failing to exercise due care and caution under the circumstances of the accident at the time [Lee] was operating the vehicle; and

    m. Negligently retaining [Lee].

*Id.* at 1-2. As it relates to Defendants' Motion to Dismiss Plaintiff's negligent entrustment claims, the Court found that there was:

5

> "a general lack of detail supporting the plaintiffs' claims against Western Express. Specifically, most of the plaintiffs' allegations do little more than state legal conclusions tracking the elements of a negligent entrustment claim under Pennsylvania law. However, the plaintiffs do allege that Western Express 'permitted Lee to operate its motor vehicle when it knew or should have known that Lee had worked too many hours and did not have sufficient rest so as to cause him to be a danger to other motor vehicles on the roadway.' While stated in a conclusory fashion, this allegation does include facts; i.e., that Western was aware or should have known that Defendant Lee had been overworked and was not sufficiently rested at the time of the accident."

*Id.* at 6. Although the Court denied Defendants' Motion to Dismiss, the Court granted Defendants' Motion for a more definite statement due to the "vague and conclusory nature" of the claims. *Id.* at 7. Defendants further moved to dismiss claims (e)-(l) listed above, arguing they are conclusory statements. The Court stated:

> "We agree that the plaintiffs present their allegations in a highly conclusory fashion, but find that there is at least one fact alleged which could give rise to a claim for the independent negligence of Western Express.
>
> As with the plaintiffs' claims for negligent entrustment, the vast majority of the allegations included in the subsections of paragraph 33 are legal conclusions which attempt to track and recite the law of negligence in Pennsylvania. The only discernable facts appear in subparagraph (k) of paragraph 33. This paragraph states that Western Express "[p]ermitt[ed] the truck, which lacked appropriate safeguards, equipment, and maintenance that would have avoided or prevented the injuries to Mr. Alexander, to remain in operation[.]" (Id., ¶ 33(k).) Viewing these allegations in the light most favorable to the plaintiff, as we must, we find that the plaintiff has alleged facts—that the truck driven by Lee at the time of the accident was in need of service—which could give rise to a claim for the independent negligence of Western Express if proven. We note here that there is very little in the complaint in its present form to explain the connection or relevance that an out-of-service truck would have to the accident in this case—an important element of the plaintiffs' claim, and one which the defendants are entitled to know. As such, like the plaintiffs' claims for negligent entrustment, while we recommend denial of the motion to dismiss, we recommend that the defendants are entitled to more detail in these pleadings and that the motion for a more definite statement, in the discretion of the court, should be granted as to these claims as well."

*Id.*

6

Here, Seemann provided vague allegations like the plaintiffs in both *Schmidt* and *Alexander*. Unlike the plaintiff in *Alexander*, Seemann has not set forth any factual basis for the negligent hiring, training, entrusting, supervising, retaining, and/or contracting claims. The plaintiff in *Alexander* specifically alleged Western Express knew or should have known 1) Lee was not physically and/or mentally competent to operate the vehicle; 2) Lee worked too many hours; and 3) the truck lacked appropriate safeguards, equipment, and maintenance that would have prevented the injuries. Seemann does not provide any specific allegations.

This issue has been litigated in this circuit a limited number of times. In *Cambron v. RK Shows, Inc.,* the Court dismissed plaintiff's negligent hiring claim. 2014 WL 3419128, *5 (W.D. Ky. 2014). In the complaint, the plaintiffs only stated, "Defendant RK failed to ensure the safety of the civil rights of all invitees through their negligent hiring of Defendants Clark and Denton, directly and proximately causing the violation of the civil rights of Plaintiffs." *Id.* at 4. In *Warner v. Bob Evans Farms, Inc.,* the Court also dismissed the plaintiff's claim of negligent hiring/retention. 2010 WL 1451354, *3 (E.D. Ky. Apr. 8, 2010). In the complaint, plaintiff stated, "Bob Evans had a duty to Warner to conform to a reasonable standard of conduct in the hiring and retention of employees." *Id.* Plaintiff went on to allege "Bob Evans knew or reasonably should have known that its employees were likely to cause tortious and other injuries to persons including Warner." *Id.* The Court dismissed the plaintiff's claims because it gave "nothing more than a formulaic recitation of the elements of a negligent retention claim followed by legal conclusions." *Id.* Here, like Warner, Seemann lists certain duties New Faith had and then summarily states New Faith was negligent. There are no factual allegations to support this claim. As such, Seemann's claims for negligent hiring, training, entrusting, supervising, retaining, and/or contracting must be dismissed. However, the Court will grant Seemann an opportunity to amend her complaint.

### B. Violation of the Federal Motor Carrier Safety Regulations

Defendants argue Seemann's claims regarding the Federal Motor Carrier Safety Regulations must also be dismissed because Seemann only provides conclusory allegations. Seemann argues a plaintiff is not required to plead violations of specific regulations.

In *Carson v. Tucker,* the plaintiff alleged, the defendants were negligent, in relevant part, due to:

> bb. failure to operate, maintain, inspect and repair his vehicle in accordance with the application Federal Motor Carrier Safety Regulations and Pennsylvania statutes and regulations;
>
> cc. operating his vehicle in violation of the rules and regulations of the Federal Motor Carrier Safety Regulations;
>
> dd. operating his vehicle in violation of the rules and regulations of the Federal Motor Carrier Act;
>
> t. operating its vehicle in violation of the Rules and Regulations of the Federal Motor Carrier Safety Regulations.

2020 WL 1953655, *6 (E.D. Pa. Apr. 23, 2020). The Court found those statements to be vague and required a more definite statement from the plaintiff. *Id.* at 7.

Here, Seemann stated,

> As a motor carrier, Defendant New Faith Freight had certain duties and responsibilities as defined by the Federal Motor Carrier Safety Regulations and industry standards, including the duty to properly qualify Defendant Copeland, the duty to properly train Defendant Copeland, the duty to supervise the hours of service of Defendant Copeland, the duty to properly inspect and maintain its vehicles, and the duty to otherwise establish and implement necessary management controls and systems for the safe operation of its commercial motor vehicles.

[DN 1 at 3]. These statements are similar to the statements made by the plaintiff in *Carson*. The Court will grant Seemann an opportunity to amend her complaint.

### C. Punitive Damages

In her complaint, Seemann has asked for punitive damages. Defendants argue Seemann has not alleged a plausible claim for punitive damages.

In Kentucky, a plaintiff may be entitled to punitive damages if the defendant has acted grossly negligent. *Gibson v. Fuel Transp., Inc.,* 410 S.W.3d 56, 59 (Ky. 2013). For punitive damages to be appropriate, there must be a "finding of failure to exercise reasonable care, and then an additional finding that this negligence was accompanied by wanton or reckless disregard for the lives, safety or property of others." *Horton v. Union Light, Heat & Power Co.,* 690 S.W.2d 382, 389-390 (Ky. 1985) (internal quotations omitted).

Here, Seemann argues "New Faith Freight allowed Copeland to operate its tractor-trailer with its full knowledge and consent." [DN 15 at 13]. However, as this Court has already found, Seemann has not sufficiently plead facts of New Faith's alleged negligence. Based on the current complaint, Copeland failed to yield the right of way and caused a collision with Seemann's vehicle. It is unclear what acts by either Copeland or New Faith constitute gross negligence. *See Zachery v. Shaw,* 2013 WL 1636385, *3 (W.D. Ky. Apr. 16, 2013). Due to the vague nature of Seemann's complaint, this Court will again dismiss her claim for punitive damages but allow her to amend.

## IV. Conclusion

For the above stated reasons, **IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss [DN 14] is **GRANTED**. Seemann shall file an amended complaint no later than fourteen (14) days after the entry of this Order.

**IT IS SO ORDERED**.

**Thomas B. Russell, Senior Judge**
**United States District Court**

October 30, 2020

cc: counsel